IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANK HARRIS, R09486, | ) |
| | ) |
|                **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )   Case No. 21-cv-440-DWD |
| DR. DAVID, | ) |
| DR. VIPEN K. SHAH, | ) |
| DR. K. BIRCH, | ) |
|                **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Frank Harris, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at the North Lawndale Adult Transition Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Vienna Correctional Center ("Vienna"). Plaintiff claims that Defendants Drs. David, Shah, and Birch were deliberately indifferent to his medical needs, specifically they failed to adequately diagnose or treat his existing knee injury. (Doc. 16). Defendants Shah and David have moved for summary judgment (Doc. 42) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Doc. 45). The Motion (Doc. 42) will be denied, and this case will proceed to merits discovery.

## BACKGROUND

In the Amended Complaint (Doc. 16), Plaintiff alleged that he injured his left knee during yard time at Lawrence Correctional Center. Accompanying medical records

showed that on March 31, 2012, plaintiff was seen at the healthcare unit for knee pain from an injury he sustained during a September 2010 basketball game. (Doc. 16 at 39). Plaintiff repeatedly sought care over the years, during which time he went to multiple other IDOC facilities before arriving at Vienna on April 26, 2018. Upon arrival at Vienna, he alleges he saw Dr. David on June 6, 2018, but Dr. David refused an MRI and continued old methods of treatment. On July 16, 2018, Plaintiff saw Dr. Shah, who again continued old methods of treatment. In September of 2018, Plaintiff first saw Dr. Birch, but he was unable to convince her to take a more aggressive course of treatment until February 2020 when she directed an MRI. The MRI was conducted in March of 2020, and in June of 2020 a specialist informed Plaintiff that he had a torn patella tendon.

After initial review under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on Claim 5, an Eighth Amendment deliberate indifference claim against Drs. David, Shah, and Birch for their treatment of Plaintiff's knee injury at Vienna. (Doc. 23 at 6).

## FINDINGS OF FACT

The parties' arguments pertain to two grievances—grievance number 169-09-019 (Doc. 43-1 at 1-4) and grievance number 151-07-020 (Doc. 48-1 at 13-24).

Grievance 169-09-019 was filed on September 24, 2019. In the grievance, Plaintiff alleged that in 2011 he hyperextended his left knee while on yard at Lawrence. (Doc. 43-1 at 3). X-rays were performed, and a doctor diagnosed tendonitis, and he was prescribed steroids, pain medication and physical therapy. He complained of knee pain at Menard, but was never seen, and he complained of knee pain at Galesburg, where he again received x-rays. The new x-rays showed arthritis, so he was given more pain medication.

He alleges his knee buckled in 2016 while descending stairs, and in 2017, a nurse practitioner told him he may have a torn tendon that could not be detected without an MRI. He was transferred to Danville and got a "knee shot" and more pain medication, but no MRI.

Upon arrival at Vienna in April 2018, Plaintiff saw a nurse practitioner who gave him prednisone for his pain. He asked for an MRI and she informed him there was a process that had to be completed before an MRI, which included an x-ray. The nurse practitioner gave him more pain medication, and he alleges for the next several months he continued to have problems with his knee, that included pain and buckling. (Doc. 43-1 at 4). He alleges in 2019 he was seen twice by the doctor for his knee pain, and as recently as September 23, 2019, he was seen but the medical staff refused to send him out for an MRI. Plaintiff requested an MRI and appropriate treatment.

On September 30, 2019, a counselor wrote that Plaintiff was seen on June 11, 2018, by Dr. Shah for knee pain, and x-rays were taken but were negative. (Doc. 43-1 at 3). On July 17, 2018, he was seen by Dr. Shah and no further treatment was recommended. On September 11, 2018, Plaintiff was seen by Dr. Birch for knee pain. He was seen for multiple follow-ups in 2019, and apparently reported in February of 2019 that the medication was helping his knee pain. On October 22, 2019, a grievance officer recommended that the grievance be denied because medical concerns were being addressed on an ongoing basis. (Doc. 43-1 at 2). The Warden concurred on October 24, 2019, and Plaintiff appealed to the ARB on October 28, 2019. (*Id.*).

On November 12, 2019, the ARB denied the grievance as appropriately handled by the facility, and noted, "the actual treatment ordered is not within the jurisdiction of this office and must be ordered by the attending physician." (Doc. 43-1 at 1).

Grievance 151-07-020 was filed on July 28, 2020. In the grievance, Plaintiff alleged that he learned on June 23, 2020, at an outside specialist visit that he had suffered a serious injury. (Doc. 48-1 at 16). In the grievance, Plaintiff identified 31 care providers or officials, and Wexford. He catalogued his entire course of care from 2012 through the filing of the grievance. Relevant to this Motion, he alleged that on June 6, 2018, he saw Dr. David for left knee pain. (Doc. 48-1 at 22). Dr. David examined both knees, ordered new x-rays, and provided a cortisone pack and pain medication, but refused an MRI. On June 15, 2018, Plaintiff saw Dr. Shah. Dr. Shah told him he had osteoarthritis and provided a new knee sleeve. Plaintiff alleges that Dr. Shah did not tell him the x-ray did not work on the date he was x-rayed, nor did he schedule a new x-ray or an MRI. On July 18, 2018, Plaintiff saw Dr. Shah again. He complained of ongoing pain, and stated the treatment was ineffective, but Dr. Shah refused additional testing and prescribed more Ibuprofen.

On September 11, 2018, Plaintiff first saw Dr. Birch. Initially, Dr. Birch followed the same course of treatment as other providers. (Doc. 48-1 at 22-23). Eventually, on February 7, 2020, Dr. Birch agreed to recommend an MRI, which was performed on March 3, 2020. (*Id.* at 23). Plaintiff saw Dr. Birch on March 6, 2020, to review the results, and Dr. Birch informed him that he had a serious injury that required a specialist's attention.

On June 23, 2020, an orthopedic specialist informed Plaintiff that he had "traumatic damage" to his left patella tendon, which could have a permanent impact. (Doc. 48-1 at 23).

In response to the grievance, a counselor wrote,

> This grievance covers a time span from 2012 to present, from the date the offender indicates the injury first occurred until 6/23/20 when he saw an outside specialist. DR504F requires, "A grievance must be filed with the counselor or grievance officer in accordance with the procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." The allegations outside of that timeframe cannot be addressed per DR504. DR504F also requires, "the grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." Although the offender names staff at VCC he does not indicate any specific allegation, during the 60 day timeframe. The offender indicates he was seen by Dr. Birch on 2/7/20 and was ordered an MRI. He received the MRI on 3/3/20 and she reviewed the results with him on 3/6/20. The grievant indicates, he was referred to a specialist at that time. He indicates he saw the specialist on 6/23/20.

(Doc. 48-1 at 16).

On September 5, 2020, the grievance officer reviewed the grievance in detail, and catalogued recent care with the orthopedic specialist. (Doc. 48-1 at 14-15). The grievance officer recommended that the grievance be denied because treatment was ongoing, and the "DON"[1] informed him that Plaintiff's status was being monitored closely. As to care at facilities other than Vienna, the grievance officer noted that he could not substantiate any of those allegations. The Warden concurred on September 15, 2020, and on September 25, 2020, Plaintiff appealed to the ARB.

---

[1] Presumably this is the "Director of Nursing."

The ARB stamped the grievance documentation as received on October 2, 2020, but did not issue a response until March 15, 2021. The grievance was returned because it "was not submitted in the timeframe outlined in Department Rule 504; therefore this issue will not be addressed further." (Doc. 48-1 at 13).

The Defendants' Motion for Summary Judgment is supported by additional grievance documentation. (Docs. 43-1, 43-2[2], 48-1).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to

---

[2] The Court notes that a few pages of included grievance documentation pertain to other offenders. Defendants should take care in the future not to include irrelevant documents that may contain information about other inmates. (Doc. 43-2 at 37-44).

exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g., Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance

but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a).

B. Analysis

The Defendants seek summary judgment for failure to exhaust as to Claim 5 on behalf of Defendants Dr. David and Dr. Shah. They argue that Plaintiff's September 2019 grievance (169-09-019) failed to exhaust the claims against them because they were not named in the grievance, and Section 504.810(c) of the Illinois Administrative Code requires that the grievance contain factual details about each aspect of the grievance, including the name of each person who was subject to the complaint. (Doc. 43 at 6). The Court is not persuaded, because the Seventh Circuit has never endorsed the "invitation to engraft on to § 1997e(a) the requirement that defendants to a civil suit be first named in an inmate's prison grievance." *Dye v. Kingston*, 130 F3d. App'x 52, 55 (7th Cir. 2005). This is especially true where the plaintiff's grievance contained enough information to

put the prison on notice of the problem. *See e.g.*, *Kyles v. Beaugard,* 2017 WL 4122708 (N.D. Ill. 2017) (collecting cases for the proposition that a grievance does not fail to exhaust remedies if it is factually clear but does not explicitly name each defendant).

Here, it is clear from the counselor's response that Vienna officials understood what Plaintiff grieved. In response to the grievance, the counselor stated that Plaintiff arrived at Vienna with documented chronic knee pain. (Doc. 43-1 at 3). Plaintiff had a "follow-up appointment" with Dr. Shah on June 11, 2018, concerning his chronic knee pain, and he subsequently got x-rays. (Doc. 43-1 at 3). In his complaint, Plaintiff alleged that on June 6, 2018, he saw Dr. David who ordered x-rays, and then he had follow-ups with Dr. Shah. (Doc. 16 at 9). The grievance also discussed appointments with Dr. Birch leading up to September 23, 2019, just one day before Plaintiff filed the grievance. (Doc. 43-1 at 3). The grievance officer denied the grievance based on ongoing care, and the ARB denied the grievance because the issue was handled appropriately at the facility. (Doc. 43-1 at 1-2). Based on the response at the facility, it cannot be said that the grievance was insufficient to give notice of the conduct complained of. The grievance officials clearly understood that Plaintiff was complaining about a course of care he had received since his April 2018 arrival at Vienna. Thus, the Court does not believe summary judgment is warranted on the basis identified by Defendants Shah and David.

The Defendants also argued that the grievance was filed well outside of the 60-day window to initiate a grievance because Plaintiff was seen by David in June of 2018 and Shah in June and July of 2018, but he did not file the grievance until more than a year later. Neither the prison officials, nor the ARB relied on untimeliness to deny the

grievance, so the Court declines the invitation to invoke this procedural hurdle on behalf of the prison. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (if prison officials do not address a prisoner's procedural shortcomings, and instead address a grievance on the merits, then the grievance has served the purpose of exhaustion).

The Court briefly notes that, in response to summary judgment, Plaintiff argued that grievance number 169-09-019 was irrelevant to his claims against Drs. David and Shah, because he fully exhausted his remedies as to those defendants in a separate grievance—grievance number 151-07-020. Plaintiff is correct that he clearly named Drs. Shah and David in grievance 151-07-020, and that the grievance was presented at all stages of review at the prison and the ARB, but it is possible this grievance was not properly exhausted because it was denied by the counselor and the ARB as untimely under DR504F. Specifically, the counselor noted that the grievance was filed in July of 2020, but all the conduct by Vienna staff complained of occurred by March 6, 2020.

Plaintiff argues that the grievance was timely because his actual knee injury was not diagnosed until June 23, 2020, by an outside specialist, and he filed the grievance well within 60 days of learning about his actual diagnosis. This argument is more consistent with a tolling argument concerning the statute of limitations than it is with the IDOC grievance procedure. To fully resolve this argument, the Court would need to unpack the meaning of Section 504.810(a), specifically the language that requires that a grievance be filed "within 60 days after the discovery of the incident." Because the Court already determined that grievance 169-09-019 was sufficient to exhaust administrative remedies in this case, it will not continue the analysis as to Plaintiff's alternative grievance.

**DISPOSITION**

The Motion for Summary Judgment (Doc. 42) is **DENIED**. Claim 5 will proceed against Drs. David, Shah, and Birch. A merits discovery schedule will issue separately.

**IT IS SO ORDERED.**

Dated: February 24, 2023

_____
DAVID W. DUGAN
United States District Judge