## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FRANK HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 21-cv-440-DWD** |
| ) | |
| **DR. ALFONSO, DAVID, DR. VIPIN** ) | |
| **SHAH, and DR. KIMBERLY BIRCH,** ) | |
| ) | |
| **Defendants.** | |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Defendants Dr. Alfonso David ("Dr. David"), Dr. Kimberly Birch ("Dr. Birch"),

and Dr. Vipin Shah (Dr. Shah"), have filed a Motion for Summary Judgment pursuant to

Federal Rule of Civil Procedure 56 and SDIL Local Rule 7.1(c). (Docs. 61 and 62). Plaintiff

Frank Harris ("Harris") has filed a response (Docs. 64 and 66), and Defendants filed a

reply (Doc. 65). For the reasons delineated below, the Court **GRANTS** the Motion for

Summary Judgment.

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Harris, an inmate in the custody of the Illinois Department of Corrections, brings

this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights.

In his First Amended Complaint, Plaintiff asserts that Drs. David, Birch, and Shah

violated his Eighth Amendment rights by providing an ineffective course of treatment

for his knee injury between June 2018 and March 2020. On May 4, 2022, the Court

conducted a merit review of Harris's First Amended Complaint and found that Harris had adequately alleged the following claim:

> Count 5:    Eighth Amendment deliberate indifference claim against Drs. David, Shah, and Birch for their treatment of Plaintiff's knee injury at Vienna Correctional Center.

## II.    APPLICABLE LAW

### A.    Summary Judgment Standard

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Liberty Lobby*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is

not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Liberty Lobby*, 477 U.S. at 252.

### III.     Compliance with Rule 56 and Local Rule 56.1

Before addressing the relevant facts, the Court reviews Plaintiff's compliance with Federal Rule of Civil Procedure 56 and Local Rule 56.1[1]

#### A.     Federal Rule of Civil Procedure 56

As is relevant here, pursuant to Rule 56, the party opposing a motion for summary judgment must properly address the moving party's assertions of fact. FED. R. CIV. P. 56(e). To properly dispute an assertion of fact, the non-moving party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). An affidavit or declaration must be (1) made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). When "a party fails to properly support an

---

[1] The Southern District of Illinois recently revised its local rules, effective October 30, 2023. This included the addition of Local Rule 56.1 which imposes requirements on litigants in addition to the requirements set forth in Federal Rule of Civil Procedure 56.

assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

### B.    Southern District of Illinois Local Rule 56.1

Local Rule 56.1(a) provides that briefs in support of a motion for summary judgment "must contain a Statement of Material Facts which sets forth each relevant, material fact in a separately numbered paragraph." SDIL-LR 56.1(a); FED. R. CIV. P. 56(c)(1). The opposing party then files a Brief in Opposition, which "must contain a Response to the Statement of Material Facts." SDIL-LR 56.1(b). The Local Rule further provides as follows:

> The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation. The disputed facts, or parts of facts, shall contain specific citation(s) to the record, including page number(s), upon which the opposing party relies, where available.

SDIL-LR 56.1(b). Any material fact set forth in a Statement of Material Facts that is not specifically disputed by the opposing party will be deemed admitted to the extent the fact is supported by evidence in the record.  SDIL-LR 56.1(g); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010). Additionally, the "Court will disregard any asserted fact that is not supported with a citation to the record, unless the factual basis for the assertion is clearly identifiable from the parties' related citations or permissible inference." SDIL-LR 56.1(f).

The obligation imposed on an opposing party in Local Rule 56.1, "is not a mere formality." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (interpreting the Northern District of Illinois' substantially similar Local Rule 56.1) (internal quotation and citation omitted). "Rather, it follows from the obligation imposed by FED. R. CIV. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial." *Id.* The Rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." (internal quotation and citation omitted).

In this case, Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Doc. 62). Because plaintiff is a *pro se* litigant, Defendants also served him with a Rule 56 Notice (Doc. 63) as required by Local Rule 56.1(j) and Seventh Circuit precedent. *See Timms v. Frank,* 953 F.2d 281 (7th Cir. 1992); *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). The notice explains the meaning of a motion for summary judgment, the requirements set forth in Rule 56 for responding to a summary judgment motion, and the consequences of failing to properly respond to a summary judgment motion, including the consequences of failing to properly support or address asserted facts. The Court notes that, although Defendants' Rule 56 notice accurately describes Plaintiff's obligations with respect to Federal Rule of Civil Procedure 56, it does not discuss the requirements that are unique to Local Rule 56.1, such as the necessity of including a Statement of Material Facts that complies with the directives in Local Rule

56.1(b) and the necessity of responding to a Statement of Material Facts in a manner that complies with Local Rule 56.1(b).

A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"); SDIL-LR 56.1(j) (Local Rule 56.1 "applies equally to represented and *pro se* parties."). Nevertheless, where appropriate, the Court has discretion to, and at times should, afford *pro se* litigants leniency to ensure that cases are resolved on the merits. *See* e.g., *Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018).

### C.    Plaintiff's Response to Defendants' **Rule 56.1** Statement

Plaintiff submitted a brief in opposition to Defendants' motion for summary judgment that includes a response to Defendants' statement of facts. The response, which includes corresponding paragraphs, indicates that Plaintiff agrees with 76 of Defendants' 92 asserted facts. As to the remaining 16 asserted facts, the response states "Agree in part, Disagree in part. (See Affidavit of Frank Harris for response)." The referenced affidavit includes 32 paragraphs and, as to some of the allegedly disputed facts, specifies what is denied and what is admitted. The affidavit does not include any citations to the record and, initially, did not state that it was based on personal knowledge. The Court, however,

subsequently allowed Plaintiff to file an amended affidavit stating that it was based on personal knowledge.[2]

Plaintiff's response to Defendants' statement of facts does not comply with several requirements set forth in Local Rule 56.1(b). The Court, however, will allow Plaintiff some leniency on his lack of compliance with Local Rule 56.1(b). The Court finds that leniency is appropriate for two reasons. First, Local Rule 56.1 was recently amended to include new specifications for summary judgment briefs filed in the Southern District of Illinois. Second, while Defendants' Rule 56 Notice correctly describes Plaintiff's Rule 56 obligations, and the consequences of failing to comply with those obligations, it does not reference any of the requirements unique to Local Rule 56.1. Instead, to the extent that this Court's local rules are mentioned, Defendants appear to be referencing an outdated version of the Court's Local Rules – a version that did not include the requirements now found in Local Rule 56.1(b).

Given that the consequences of failing to comply with Local Rule 56.1 are so dire, and considering the Seventh Circuit's mandate in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), the Court finds that leniency is appropriate here where Defendants' Rule 56 notice did not sufficiently address the importance of complying with Local Rule 56.1's requirements. Thus, the Court will not penalize Plaintiff for failing to comply with the specifications set forth in Local Rule 56.1(b). The Court, however, will not excuse

---

[2] To the extent that statements in Plaintiff's affidavit are within his personal knowledge, there is no requirement that he cite to other portions of the record. *See* FED. R. CIV. P. 56(e).

noncompliance with Federal Rule of Civil 56, such as failing to properly support or address a fact as required by Rule 56(c).

## IV.    Factual Record

### A. Factual Assertions Deemed Admitted.

After reviewing the record and applying the law and findings discussed above, the Court finds as follows:

1.  Plaintiff expressly admits the following asserted facts: 1-5, 9, 10, 12, 15, 17, 19-21, 23, 25, 26, 29, 31, 32-34, 37, and 39-92.

2.  In his response to Defendants' statement of facts, Plaintiff indicates that he agrees in part and disagrees in part as to the following asserted facts: 6, 7, 8, 11, 14, 16, and 30. Plaintiff then directs the Court to his affidavit. A review of Plaintiff's affidavit, however, reveals that Plaintiff either agrees with the asserted fact, does not mention the asserted fact, or asserts facts showing that there is no actual dispute. Accordingly, these facts are deemed admitted.

3.  In his response to Defendants' statement of facts, Plaintiff indicates that he agrees in part and disagrees in part as to the following asserted facts: 13, 18, 22, 24, 27, 38, 35, 36. Plaintiff then directs the Court to his affidavit. As to these facts, Plaintiff's affidavit includes attestations, based on his personal knowledge, that purportedly dispute the asserted fact. In summarizing the undisputed material facts, the Court has considered Plaintiff's attestations and notes whether each attestation has been credited or disregarded.

### B. Undisputed Material Facts[3]

Plaintiff injured his knee playing basketball in March 2012. His knee hyperextended after he collided with another player. Initially, Plaintiff alleged that he

---

[3] Given Plaintiff's *pro se* status, in determining whether alleged facts are undisputed, the Court has independently reviewed the evidentiary record. Unless otherwise indicated, the following facts are undisputed.

was seen by Dr. David for chronic left knee pain on June 6, 2018. However, Dr. David did not treat Plaintiff on June 6, 2018, and has never met Plaintiff.

The physician who saw Plaintiff on June 6, 2018 was Dr. Shah. At that time, Dr. Shah noted that Plaintiff had injured his knee playing basketball and ordered x-rays of both knees. The x-rays ordered by Dr. Shah were completed on June 11, 2018.

On June 15, 2018, Plaintiff had a follow-up appointment with Nurse Practitioner ("NP") Greta Smith. NP Smith noted that Plaintiff had a knee sleeve, but it was stretched out. She also noted that he did not have an acute injury. NP Smith ordered an additional knee sleeve, prescribed Motrin 800 mg, and scheduled Plaintiff for a follow-up visit in one month. Plaintiff received the additional knee sleeve on June 28, 2018. Plaintiff's second and final visit with Dr. Shah was on July 18, 2018. At the visit, Plaintiff reported buckling. Dr. Shah, however, found that Plaintiff's knees were within normal limits[4] and ordered a continuation of Plaintiff's current treatment plan.

On September 7, 2018, Plaintiff visited sick call complaining of bilateral knee pain. Plaintiff was seen by a nurse. The nurse noted Plaintiff's range of motion was good, but he needed assistance to stand up from a squatting position. Plaintiff was referred to the physician.

---

[4] Defendants assert that "upon examination," Dr. Shah found that Plaintiff's knees were within normal limits. (Doc. 62, pg. 5 ¶ 13). Plaintiff disputes that Dr. Shah "performed any type of knee exam or evaluation at that time." (Doc. 66, pg. 4 ¶ M). While Plaintiff can testify to what he experienced and saw during his visit with Dr. Shah, he is not a medical expert, and he is not qualified to opine as to whether Dr. Shah's evaluation of his condition was medically appropriate or whether he performed an adequate knee examination. *See* Fed. R. Evid. 701, 702. Further, Plaintiff does not dispute that he was evaluated by Dr. Shah on this date for left knee pain. To the extent that "upon examination" is intended to describe the examiner's visual observation or inspection of Plaintiff's knee, a reading supported by the medical records and adopted by the Court for purposes of this motion, Plaintiff does not dispute the fact as stated.

On September 11, 2018, Plaintiff was seen by Dr. Birch for bilateral knee pain. Plaintiff denied any swelling and admitted to working out daily, including squats, lunges, leg presses, and running. Upon examination, Dr. Birch observed that both knees were normal in appearance with normal palpitation and range of motion. Dr. Birch prescribed Motrin 600 mg., ordered basic blood work, and instructed Plaintiff to do strengthening exercises for his knee but not squats, lunges, or leg presses. On January 29, 2019, Dr. Birch saw Plaintiff for an unrelated pain issue, discontinued his Motrin, and prescribed Mobic 15 mg. Dr. Birch also ordered Plaintiff to restrict his weightlifting. On February 27, 2019, at a follow-up visit with Dr. Birch, Plaintiff reported the Mobic was helping his arm and knee pain.[5]

Plaintiff did not see Dr. Birch again until May 7, 2019. At that visit, Plaintiff indicated the Mobic was making him tired. Dr. Birch discontinued the Mobic and prescribed Robaxin 750 mg. and Naproxen 500 mg.

Plaintiff returned to sick call on September 13, 2019, complaining of left knee and left heel pain. It was noted that Plaintiff had a knee sleeve and his anatomical alignment was within normal limits. Plaintiff was referred to Dr. Birch who saw him on September 19, 2019. Dr. Birch noted Plaintiff's prior physical therapy, knee sleeve, and current left

---

[5] Plaintiff disputes that he "ever" told Dr. Birch Mobic was helping his knee pain. (Doc. 66, pg. 5 ¶ Q). But this contradicts Plaintiff's earlier deposition testimony. At his deposition, Plaintiff testified that initially he thought the Mobic was working and that he had a conversation with Dr. Birch about the fact that he was feeling a "little bit better." (Doc. 65-1, pgs. 10-11). He further testified that he continued to take the Mobic, believing it was making him feel better and that he believed the Mobic was working until approximately March 14, 2019, when the pain seemed to be getting worse. (Doc. 65-1, pg. 11). Plaintiff cannot circumvent his deposition testimony by citing to a self-serving affidavit. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."

foot pain. Plaintiff also reported his knee was swelling frequently, and he was icing it and refraining from doing squats. Dr. Birch concluded there was no swelling present and that Plaintiff's range of motion was normal.[6] Plaintiff underwent a stability test, which was normal. Dr. Birch ordered Prednisone 10 mg for five days and increased Plaintiff's Motrin prescription to 800 mg. Dr. Birch also ordered x-rays of Plaintiff's left knee and foot.

Plaintiff underwent x-rays on his left knee and left foot on September 23, 2019, and, on October 7, 2019, saw Dr. Birch for a follow-up appointment. During the visit, Plaintiff reported the Prednisone did not help him, but the Motrin did. Dr. Birch's observation notes indicate that Plaintiff's left knee had a normal appearance, and his range of motion was normal.[7] Dr. Birch prescribed Motrin 800 mg for the pain.

---

[6] Defendants state that Plaintiff underwent a stability test and that "upon examination" Dr. Birch concluded there was no swelling present and that Plaintiff's range of motion was normal. (Doc. 62, pg. 6 ¶ 22). Plaintiff disputes that Dr. Birch performed "any exam or stabilizing test, like the Lachman test." (Doc. 66, pg. 5 ¶ S). While Plaintiff can testify to what he experienced and saw during the examination, he is not a medical expert, and he is not qualified to opine as to whether Dr. Birch's evaluation of his condition was medically appropriate or whether she performed an adequate examination. *See* Fed. R. Evid. 701, 702. Further, Plaintiff does not dispute that he was evaluated by Dr. Birch on this date for left knee pain. To the extent that "upon examination" is intended to describe the examiner's visual observation or inspection of Plaintiff's knee, a reading supported by the medical records and adopted by the Court for purposes of this motion, Plaintiff does not dispute the fact as stated. Finally, Defendants do not assert that Dr. Birch performed the "Lachman test" at this visit. Defendants also contend that the alleged factual dispute should be disregarded because it contradicts Plaintiff's prior deposition testimony. *See* Bank of Illinois v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168 (7th Cir. 1996) The Court has reviewed the relevant excerpts and concludes that application of the "sham" affidavit rule is not appropriate as to this attestation. *See* Castro v. DeVry Univ., Inc., 786 F.3d 559 (7th Cir. 2015) (An affidavit can be excluded as a sham only where the witness has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact.").

[7] Defendants state "upon examination Plaintiff's left knee had a normal appearance and his range of motion was normal." (Doc. 62, pg. 7 ¶ 24). Plaintiff disputes that Dr. Birch performed "any exam on my left knee and that the range of motion was normal or any normal appearance." (Doc. 66, pg. 5 ¶ U). While Plaintiff can testify to what he experienced and saw during the examination, he is not a medical expert, and he is not qualified to opine as to whether Dr. Birch's evaluation of his condition was medically appropriate or whether she performed an adequate examination. *See* Fed. R. Evid. 701, 702. Likewise, he is not qualified to testify about whether Dr. Birch's objective medical findings were incorrect. *See* Fed. R. Evid. 701, 702.

On December 20, 2019, Plaintiff returned to sick call complaining of left knee pain and on January 3, 2020, Dr. Birch saw Plaintiff for his ongoing complaints of foot pain. She continued Plaintiff on Motrin. Plaintiff visited sick call again on January 14, 2020 and January 17, 2020 complaining of left knee pain and knee buckling. During these visits, the examiner observed that Plaintiff's knee was anatomically aligned, his gait was steady and strong, he had a full range of motion, and there was no swelling.[8]

On January 28, 2020, Plaintiff returned to sick call complaining of left knee pain and a popping/grinding sound in his left knee. Dr. Birch saw Plaintiff 10 days later. Dr. Birch performed a Lachman test on Plaintiff's legs to assess for a possible ACL injury and referred Plaintiff for a left knee MRI to further assess for an ACL injury. She also ordered Plaintiff a low bunk permit and instructed him not to engage in any sports or running.

On March 26, 2020, Dr. Birch saw Plaintiff for a review of the results of his MRI. The MRI showed marked proximal patellar tendinosis with extensive partial-thickness

---

Further, Plaintiff does not dispute that he was evaluated by Dr. Birch on this date for left knee pain. To the extent that "upon examination" is intended to describe Dr. Birch's visual observation or inspection of Plaintiff's knee, a reading supported by the medical records and adopted by the Court for purposes of this motion, Plaintiff does not dispute the fact as stated. Finally, during his deposition, Plaintiff reviewed Dr. Birch's observation notes for this appointment. Plaintiff admitted that he does not know what Dr. Birch observed during the visit. (Doc. 65-1, pg. 11).

[8] Defendants state that "upon examination" Plaintiff's knee was anatomically aligned, his gait was steady and strong, he had a full range of motion, and no swelling. (Doc. 62, pg. 7 ¶¶ 27-28). Plaintiff disputes that "any exam was done." (Doc. 66, pg. 5 ¶¶ W, X). He also disputes the examiner's observations regarding his left knee, gait, and range of motion. (*id.*). While Plaintiff can testify to what he experienced and saw during the examination, he is not a medical expert, and he is not qualified to opine as to whether the examiner's evaluation of his condition was medically appropriate or whether the nurse performed an adequate examination. *See* Fed. R. Evid. 701, 702. Likewise, he is not qualified to testify about whether the nurses objective medical findings were incorrect. *See* Fed. R. Evid. 701, 702. Further, Plaintiff does not dispute that he was evaluated at sick call on this date for left knee pain. To the extent that "upon examination" is intended to describe the nurses visual observation or inspection of Plaintiff's knee, a reading supported by the medical records and adopted by the Court for purposes of this motion, Plaintiff does not dispute the fact as stated.

tear, along with stripping of the central insertional fibers of the tendon as its patellar attachment, and with intact fibers clearly identified. Dr. Birch referred Plaintiff to an orthopedic surgeon for further treatment.

On April 29, 2020, Dr. Birch saw Plaintiff for a follow-up on his complaints of left knee and left heel pain. Dr. Birch ordered Tylenol and continued Plaintiff on Motrin and Robaxin.

On May 13, 2020, Plaintiff returned to sick call for left knee pain. The nurse noted Plaintiff's left knee had swelling. She also noted that he had a left knee sleeve but was not wearing it at the time of the visit.[9] During a sick call visit on June 16, 2020, the examiner noted there were no gross abnormalities and zero swelling. However, Plaintiff's knee was popping and cracking at that time.[10]

On June 23, 2020, Plaintiff saw Nurse Practitioner Robert Deaton at the Orthopedic institute. Treatment options were reviewed and included nonsteroidal anti-inflammatory medication and bracing the left knee.

---

[9] In their statement of facts, Defendants indicate that the nurse noted Plaintiff had a left knee *brace* but was not wearing it at the time. (Doc. 62, pg. 8 ¶ 35). Plaintiff disputes he had a left knee *brace* at this time, noting that he did not receive a knee *brace* until June 23, 2020. (Doc. 66, pg. 6 ¶ bb). In their reply, Defendants note that, in the medical records, knee *brace* and knee *sleeve* are used interchangeably. (Doc. 65, pg. 7). Plaintiff admits that he had a knee sleeve on June 15, 2018 and received a new knee sleeve on June 28, 2018. (Doc. 66, pg. 4 ¶ L). He also admits that he had a knee sleeve in September 2019. (Doc. 66, pg. 5 ¶ R).

[10] Here, the Court credits Plaintiff's version of the facts as to whether his knee was crackling or popping. (Doc. 66, pg. 6 ¶ cc). Plaintiff also asserts, once again, that no examination was performed at this visit. (*Id.*). While Plaintiff can testify to what he experienced and saw during the examination, he is not a medical expert, and he is not qualified to opine as to whether the examiner's evaluation of his condition was medically appropriate or whether the nurse performed an adequate examination. *See* Fed. R. Evid. 701, 702. Further, Plaintiff does not dispute that he was evaluated at sick call on this date for left knee pain. To the extent that "upon examination" is intended to describe the nurse's visual observation or inspection of Plaintiff's knee, a reading supported by the medical records and adopted by the Court for purposes of this motion, Plaintiff does not dispute the fact as stated.

On June 30, 2020, Dr. Birch saw Plaintiff for a follow-up visit. Plaintiff was diagnosed with a partial tear of his left patellar tendon and the recommended treatment was a hinged knee brace and nonsteroidal anti-inflammatory medication. Dr. Birch noted that Plaintiff already received the recommended knee brace and prescribed continued use of Motrin as needed.[11]

On August 4, 2020, Plaintiff saw Nurse Practitioner Deaton at the Orthopaedic institute and received a steroid injection. Thereafter, on August 12, 2020, Plaintiff saw Dr. Birch for a follow-up. Plaintiff received another steroid injection and rated his pain as a seven out of ten. Dr. Birch prescribed Tramadol 50 mg and continued Plaintiff's other medications.

On September 15, 2020, Plaintiff saw Nurse Practitioner Deaton at the Orthopaedic Institute and reported continuing discomfort. Nurse Practitioner Deaton recommended a referral to sports medicine.

On September 20, 2020, Dr. Birch saw Plaintiff for another follow-up. Plaintiff's left knee had edema and pain, and his range of motion was limited. Dr. Birch discontinued Plaintiff's Tramadol prescription and entered an order for Nortriptyline 50 mg. On November 3, 2020, Dr. Treg Brown recommended Plaintiff for an arthroscopic

---

[11] Plaintiff disputes that a hinged knee brace was previously given to him, stating that the "knee brace wasn't given until I visited the orthopedic institution on June 23, 2020." (Doc. 66, pg. 6 ¶ EE). But Plaintiff's attestation *confirms* the fact he is attempting to dispute. Plaintiff is contending that he received his knee brace on June 23, 2020, confirming that, at his visit with Dr. Birch on June 30, 2020, he had already received a knee brace. Defendants also assert that Dr. Birch prescribed Tramadol 50 milligrams on June 30, 2020. Plaintiff disputes this. As to whether Tramadol was prescribed on June 30, 2020, the Court credits Plaintiff's version of the facts. Plaintiff, however, admits that Dr. Birch prescribed Tramadol in August 2020. Plaintiff also states that Dr. Birch did not prescribe Mobic on June 30, 2020. Defendants, however, do not contend that Mobic was prescribed on June 30, 2020.

debridement of his patella tendon. Dr. Birch then saw Plaintiff on November 10, 2020, and directed Plaintiff to continue his prior medications. This was Plaintiff's last visit with Dr. Birch.

Plaintiff was initially scheduled for left knee surgery on December 14, 2020. However, prior to his scheduled left knee surgery, Plaintiff fractured his ankle, requiring emergency surgery to repair the ankle. He was also diagnosed with COVID. Therefore, Plaintiff's left knee surgery was delayed until February 22, 2021. Following surgery, Plaintiff received treatment for pain and swelling and attended physical therapy sessions. He was also received knee sleeves and insoles deemed medically necessary. On June 17, 2022, Plaintiff reported pain in his right knee, but stated his left knee was "great" since the surgery. On September 20, 2022, Plaintiff reported that he did not want to continue treatment at the Orthopedic Institute.

At his deposition, Plaintiff testified that his knee mobility and condition after surgery is nowhere near it was before the injury in 2012, it is better than after he injured it. His knee no longer buckles, but he does have sharp pains occasionally. Plaintiff has been informed that he can return to normal activities, but he should not overly exert himself. Plaintiff also positively identified himself in a video he posted on TikTok on July 14, 2023. In the video, Plaintiff can be seen pressing approximately 340 pounds on a leg press exercise machine. He indicated that such activities sometimes cause him pain and when that occurs, he will "pop a pain pill."

## V.    DISCUSSION

To prevail on a deliberate indifference claim under the Eighth Amendment, a plaintiff must prove that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). To establish deliberate indifference, a plaintiff must show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to inmate health. *Gayton v. McCoy*, 593 F.3d 610, 620, 653 (7th Cir. 2010). A plaintiff need not show the individual "literally ignored" his complaint, but that the individual knew of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

"Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, at 409 (7th Cir. 2014). Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Pyles*, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* This is because "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) *cert. denied*, 519 U.S. 1126. Finally, without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

"An inmate can establish deliberate indifference by showing that medical personnel persisted with a course of treatment they knew to be ineffective." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Greeno v. Daley*, 414 F.3d 645, 654-55 (7th Cir. 2005)). Generally, in that line of cases, prisoners survive summary judgment by showing that officials "failed to conduct necessary tests, ignored specific treatment requests from the inmate, and persisted in offering weak medication—all in the face of repeated protests that the medication was not working." *Id.*

Additionally, a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (quoting *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). "Of course, not every delay in a prisoner's medical treatment gives rise to a constitutional claim. Even outside of the prison setting, patients often must wait weeks or months for specialist appointments." *Thomas v. Chmell,* No. 20 C 4564, 2024 WL 4041320, *3 (N.D. Ill. Sept. 4, 2024)* "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), as amended (Aug. 25, 2016). In an Eighth Amendment claim based on delayed treatment, summary judgment is warranted if the plaintiff has no evidence that the delay exacerbated an injury or prolonged pain. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022).

Plaintiff claims the treatment he received between June 2018 and March 2020 – numerous evaluations, X-rays, pain medication (including various nonsteroidal anti-

inflammatory medications), corticosteroid medication, muscle relaxant medication, blood work, a low bunk permit, a knee sleeve, and directions to complete strengthening exercises – were ineffective, and that Defendants harmfully delayed treatment for his knee injury. However, as is set forth more fully below, no reasonable jury could find on the record here that Defendants were deliberately indifferent to Plaintiff's knee injury.[12]

### A. Dr. David

There is no evidence that Plaintiff was ever treated by Dr. David, and Plaintiff concedes this point. (Doc. 64, pg. 10; Doc. 66, pg. 4). Accordingly, Dr. David could not have been deliberately indifferent to Plaintiff's medical needs. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995). As such, summary judgment will be **GRANTED** as to Dr. David.

### B. Dr. Shah

The undisputed evidence in the record shows that Dr. Shah did not disregard Plaintiff's complaints about his knee or fail to evaluate or treat Plaintiff. Dr. Shah saw Plaintiff once in June 2018 and once in July 2018. At the first visit, Dr. Shah ordered x-rays of both knees. At Plaintiff's follow-up visit in July 2018, Plaintiff reported that his knee was buckling. Dr. Shaw, however, observed that Plaintiff's knees were within normal limits. Dr. Shaw addressed Plaintiff's complaints by continuing his treatment plan, which at the time included Motrin for the pain and a knee sleeve.

---

[12] There is no dispute that Plaintiff suffered from an objectively serious medical condition.

Nothing in the record suggests that Dr. Shah's treatment decision was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Plaintiff also fails to show that Dr. Shah's decision not to order an MRI lacked professional judgment or was blatantly inappropriate under the circumstances. "An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is 'a classic example of a matter for medical judgment.'" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *see also Holmes v. Shah*, 748 F. App'x 72, 74 (7th Cir. 2019) (holding that a plaintiff with no evidence that an MRI was essential to assess his complaints was not entitled to a trial over his preferred diagnostic test).

In summary, Plaintiff's primary complaint as to Dr. Shah is that he failed to order an MRI. But Plaintiff has not offered any evidence that would permit a reasonable jury to find that Dr. Shah's decision not to order an MRI represented a significant departure from accepted professional norms or indicates a lapse in medical judgment. As such, summary judgment will be **GRANTED** as to Dr. Shah. *See Walker v. Zunker*, 30 F. App'x 625, 628 (7th Cir. 2002) ("Without any medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact.").

### C. Dr. Birch

Plaintiff contends that Dr. Birch's treatment was ineffective and that she was deliberately indifferent by failing to order an MRI at an earlier date. But no reasonable

jury could find on the record here that Dr. Birch was deliberately indifferent to Plaintiff's knee issue.

The record shows that Dr. Birch began treating Plaintiff's knee injury on September 11, 2018. Dr. Birch observed that both knees were normal in appearance with normal palpitation and range of motion. Dr. Birch recommended a conservative course of treatment consisting of pain medication, basic blood work, and strengthening exercises (but no squats, lunges, or leg presses). For the next year and a half, when Plaintiff returned to Dr. Birch complaining of pain, swelling, buckling and/or indicating that a particular course of treatment was ineffective, Dr. Birch responded by evaluating Plaintiff's knee, increasing the dosage of pain medication, adding new medications, ordering x-rays, and issuing a low-bunk permit. Evidence of an acute injury did not arise until February 7, 2020, prompting Dr. Birch to order an MRI. Upon reviewing Plaintiff's MRI results, Dr. Birch referred Plaintiff to an orthopedic surgeon and continued to prescribe medication to address Plaintiff's pain.

Plaintiff has not established a triable case for the care Dr. Birch provided from September 2018 to March 2020. Dr. Birch evaluated Plaintiff, ordered diagnostic tests, and recommended a course of treatment. When Plaintiff returned with additional complaints, Dr. Birch responding by adjusting the prescribed course of treatment. As with Dr. Shah, Plaintiff has not brought forth any evidence that Dr. Birch's treatment decisions were "so far afield of accepted professional standards as to raise the inference that [they were] not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Plaintiff contends that Dr. Birch should have immediately ordered an MRI, but

Plaintiff has no medical training and "his unsupported belief that he should have received different care does not raise an issue of fact." *McVay v. Obaisi,* No. 18 CV 6244, 2023 WL 2646678, at *9 (N.D. Ill. Mar. 27, 2023). *See also Walker*, 30 F. App'x at 628. Further, the undisputed record shows that Dr. Birch did not delay referring Plaintiff for an MRI, she evaluated Plaintiff and exercised her medical judgment, prescribing a different course of treatment. Absent a showing that "no minimally competent professional" would have responded differently, Dr. Birch's treatment decisions are entitled to deference. *Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir.2008). Here, Plaintiff's allegations amount to a disagreement between Plaintiff and Dr. Birch about the proper diagnostic testing and course of treatment. On the record before the Court, that is not sufficient to establish an Eighth Amendment violation. *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir.2006).

For these reasons, summary judgment will be **GRANTED** as to Dr. Birch.

## VI.    DISPOSITION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 61) is **GRANTED** in its entirety, and this action is **DISMISSED** with Prejudice. The Clerk of the Court is directed to enter judgment accordingly. All deadlines and settings on the Court's calendar are vacated.

**SO ORDERED.**

Dated: January 2, 2025

DAVID W. DUGAN
United States District Judge